# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ADA V.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> **Defendant.** | Civ. No. 20-12815 (KM) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

  Plaintiff Ada V. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") partially denying her claims for Title II Disability Insurance Benefits ("DIB"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") issued a partially favorable decision, concluding that Ada V. was not disabled prior to November 26, 2018, the date Ada V. turned 55 and became categorized as an individual of advanced age under the relevant regulations.

  The issue presented is whether the ALJ's decision is supported by substantial evidence. For the reasons stated below, the decision is **AFFIRMED**.

## I.   BACKGROUND[1]

  Ada V. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on May 16, 2016, alleging disability beginning as of March 12, 2016. (AR. 16.) Her application was denied initially then upon reconsideration. (AR. 16, 75-79, 103–107.) On April 25, 2017, Ada V. filed a

---

[1] Citations to the record are abbreviated as follows:

 DE = docket entry

 AR. _ = Administrative Record (DE 5) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 9 attachments)

 Pl. Br. = Ada V's Moving Brief (DE 18)

request for a hearing before an ALJ to review her application de novo. (AR. 127–129.) A hearing was held on October 23, 2018 and June 4, 2019, before ALJ Hilton R. Miller, who issued a decision on June 14, 2019. ALJ Miller issued a partially favorable decision: (1) denying disability, prior to November 26, 2018, at step five of the sequential evaluation, ruling that Ada V. was capable of performing light work that accommodated her limitations and existed in significant numbers in the national economy; and (2) finding that Ada V. became disabled on November 26, 2018, and continued to be disabled through the date of the ALJ's decision. (AR. 24–25.)[2]

Ada V. requested Appeals Council Review of ALJ Miller's decision, but her request was denied on July 17, 2020. This denial rendered ALJ Miller's decision the final decision of the Commissioner. (AR. 1–6.) Ada V. now appeals, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), from so much of that decision as denied benefits for the period preceding November 26, 2018. The remainder of this decision should be understood to pertain to that earlier period only.

## II. DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the

---

[2]   The ALJ found that on November, 26, 2018, Ada V.'s 55th birthday, her "age category changed to an individual of advanced age under 20 C.F.R. §§ 404.1563. AR 26. That, in the ALJ's view, tipped the balance, and he found that considering Ada V.'s age, education, and work experience, a finding of "disabled" was appropriate. AR 27.

2

ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual

findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B. The ALJ's Decision**

ALJ Miller undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

ALJ Miller concluded that Ada V. had not engaged in substantial gainful activity since March 12, 2016, the alleged onset date. (AR. 18.)

### Step 2

The ALJ found that Ada V. had the following severe impairments: fibromyalgia, asthma, history of right shoulder surgery, arthritis, depression, and anxiety. (AR. 18.) Because the ALJ found that Ada V. suffered from several severe impairments, he proceeded to step three.

### Step 3

With respect to her severe impairments, the ALJ determined that Ada V. did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR. 17.) The ALJ paid particular attention to Listings 1.02 (Major Dysfunction of a Joint), 3.03 (Asthma), and 12.04 (Depressive, Bipolar, and Related Disorders).

First, ALJ Harris declined to find that Ada V. met the criteria for Listing 1.02 (Major Dysfunction of a Joint), because the record "neither established that she is unable to ambulate effectively, nor established that she is unable to perform fine and gross movements effectively." (AR. 19.) The ALJ cited a March 2019 internal medicine consultative examination, in which Ada V. was reported to have "walked with a normal physiologic gait, and did not require the use of an ambulation aide," and "heel walk, toe walk, and squat without difficulty." (RA. 19.) Moreover, Ada V.'s "shoulders, elbows, wrists, and fingers showed normal range of motion, and there was pinch strength and grip strength 5 out of 5 bilaterally." (AR. 19.) Finally, Ada V. "was able to extend the fingers, make a fist, and oppose the thumbs bilaterally." (AR. 19.)

5

Second, ALJ Harris found that Ada V. did not meet the requirements for Listing 3.03 (Asthma), because Ada V. did not meet the $FEV_1$ values of Table VI: $FEV_1$ Criteria for 3.03A. (AR. 19.) The ALJ stated that Ada V. did not suffer from "exacerbations or complications requiring three hospitalizations of at least 48 hours within a 12-month period and at least 30 days apart." (AR. 19.) ALJ Harris also explained that although the record established that Ada V. had been diagnosed with asthma, Ada V.'s "treating physicians have categorized the claimant's asthma as moderate and stable." (AR. 19.) Finally, the ALJ noted that there were "no hospitalizations due to asthma in the record." (AR. 19.)

Third, the ALJ determined that Ada V.'s mental impairments, both individually and in combination, did not meet the criteria of Listings 12.04 (Depressive, Bipolar, and Related Disorders). (AR. 19.) Specifically, the "paragraph B" criteria were not satisfied. To satisfy "paragraph B" criteria, a claimant's mental impairments "must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (AR. 19.)[3]

---

[3] A claimant's affective disorder meets or medically equals listing 12.04 (Depressive, bipolar and related disorders) when it either satisfies both the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

*Id.*

In particular, the ALJ found that the medical evidence demonstrates that Ada V. had only moderate limitations in the areas of "understanding, remembering, or applying information," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself," as well as a mild limitation in "interacting with others." (AR. 19-20.)

The ALJ also found that the evidence failed "to establish the presence of the paragraph C criteria because there is no evidence that [Ada V.] … has a serious and persistent mental disorder of two or more years with evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of a mental disorder; and (2) a minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." (AR. 20.)

### RFC and Step 4

Next, ALJ Miller defined Ada V.'s RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can only: (1) occasionally lift and/or carry 20 pounds; (2)

---

"'Marked' as a standard for measuring the degree of limitation … means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

> frequently lift and/or carry 10 pounds; (3) stand and/or walk with normal breaks for a total of about 6 hours in an 8 hour workday; (4) sit with normal breaks for a total of about 6 hours in an 8 hour workday; (5) occasionally climb ramps and stairs; (6) never climb ladders, ropes, or scaffolds; (7) occasionally balance, kneel, crouch, stoop, and crawl; (8) does not require more than frequent manipulation using the bilateral lower extremities, such as foot controls or foot pedals; (9) occasionally reach overhead with right upper extremity; (10) no more than frequent reaching in all other directions with the right upper extremity in a right-hand dominant individual; (11) does not involve hazards, such as dangerous machinery, motor vehicles, or unprotected heights; (12) must avoid even moderate exposure to odors, dusts, fumes, gases, poor ventilation, toxic dusts, chemical, and other respiratory irritants; (13) frequent fine and gross manipulation; (14) allows a stand/sit option at will while remaining on task; (15) simple, routine, and repetitive tasks that can be explained: (16) SVP 1-2, which involves making simple decisions; and (17) only occasional changes in routine."

(AR. 20-21.)

ALJ Miller began his RFC analysis by laying out the prescribed two-step process. First, he was required to determine whether Ada V. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that would reasonably be expected to produce [Ada V.'s] pain or other symptoms." (AR. 21.) Second, the ALJ was required to "evaluate the intensity, persistence, and limiting effects of [Ada V.'s] symptoms to determine the extent to which they limit [her] work-related activities." (AR. 21.) This evaluation required him to look to objective medical evidence, or to the entire case record, where objective medical evidence does not substantiate Ada V.'s statements about "the intensity, persistence, and limiting effects of pain or other symptoms." (AR. 21.)

ALJ Harris concluded that Ada V.'s "statements concerning the intensity, persistence, and limiting effects of her symptoms … are inconsistent because the evidence generally does not support the alleged loss of functioning." (AR. 21.)

8

Beginning with Ada V.'s physical symptoms, the record establishes that she complained of shoulder pain, and that an MRI of her shoulder revealed a rotator cuff tear and tendon injury, resulting in shoulder surgery in 2012. (AR. 22.) Ada V. was also diagnosed with rheumatoid arthritis and reported, during a doctor's visit in 2016, that "she was dropping things from her hands due to severe muscular pain." (AR. 22.) Moreover, an October 2016 physical examination revealed (1) stiffness of the shoulders; (2) tenderness of both hips, and decreased grip strength of both hands; and (3) trigger point tenderness over the chest wall and the cervical spine. (AR. 22.) Additionally, Ada V. was diagnosed with fibromyalgia—exhibiting symptoms of joint pain and severe fatigue—and currently "takes medications to manage her symptoms." (AR. 22.) Finally, the ALJ noted that that Ada V. has been "diagnosed with asthma." (AR. 23.)

Notwithstanding these symptoms, however, a November 2016 examination revealed that Ada V. "was negative for musculoskeletal weakness." (AR. 22.) Although Ada V. exhibited tenderness to both shoulders, the examination concluded that her range of motion was normal, the straight leg raising test was negative, and she suffered from no joint tenderness and no crepitus. (AR. 22.) Similarly, a July 2017 physical examination revealed that Ada V. ambulated without difficulty, had "full abduction, and internal and external rotation … without pain" of the shoulders and hips, and exhibited "good range of motion" with respect to her elbows, knees, feet, and ankles. (AR. 22-23.) Although Ada V. reported no change in symptoms, during physical examinations in November 2017 and August 2018, "the claimant continued to reveal relatively benign findings." (AR. 23.)

ALJ Miller also considered Ada V.'s mental impairments. As to her depression and anxiety, the ALJ reported Ada V.'s symptoms as including "feeling let down, feeling hopeless, little interest or pleasure in doing things, trouble falling or staying asleep, feeling tired, having little energy, irregular appetite, feeling bad about self, trouble concentrating, suicidal ideation … [, and] chest pain and weakness." (AR. 23.)

9

The ALJ also cited a 2016 psychiatric consultative examination (conducted by Dr. Arrington) reporting that while Ada V.'s "affect was depressed and her mood was dysthymic, she was oriented as to time, place, and person." (AR. 24.) Dr. Arrington also reported that Ada V.'s: (1) "attention and concentration was intact"; (2) "her recent and remote memory skills were mildly impaired"; (3) her "intellectual functioning was estimated to be in the average range"; (4) "her general fund on information was appropriate to her experience; and (5) that Ada V.'s "insight and judgment were fair." (AR. 24.)

In assessing Ada V.'s RFC, the ALJ also reviewed opinion evidence as to Ada V.'s physical and mental impairments. The ALJ gave "some weight" to the opinion evidence of Dr. Cornejo. (AR. 25.) Based on a March 2019 internal medicine consultative examination, Dr. Cornejo opined that Ada V. would "have difficulties with bending and turning her neck and back; physically exerting activity; kneeling; bending; and crouching." (AR. 25.) Dr. Cornejo concluded that Ada V. would be able to perform sedentary activity and believed that Ada V. (1) would be able to walk and stand for a reasonable amount of time with breaks; (2) had "good use of her upper extremities for movements such as reaching; and (3) had good functionality of both hands and "would be able to handle fine and small sized objects." (AR. 25.)  Dr. Cornejo also assessed job-related conditions. (AR. 25.)

In giving Dr. Cornejo's opinion "some weight," the ALJ cited findings from the examination that established that Ada V. had "normal physiological gait without the use of an ambulance aid," "was able to walk to heel walk, toe walk, and squat without difficulty," demonstrated pinch strength and grip strength that were "5 out of 5 bilaterally," with muscle strength of the upper extremities being graded "5 out of 5 bilaterally." (AR. 25.)

ALJ Miller afforded "some weight" to Dr. Shapiro's opinion. Dr. Shapiro testified that Ada V. "could sit 1 hour at a time and 6 hours in an 8 hour workday; stand 1 hour at a time and 1 hour in an 8 hour workday; walk 30 minutes at a time and 1 hour in an 8 hour workday; frequently lift and/or carry 5-10 pounds; occasionally finger and handle." (AR. 25.) ALJ Miller

10

acknowledged that Dr. Shapiro is a medical expert "who is familiar with the Social Security Administration's policies and regulations," who reviewed the entire record and "provided a detailed explanation with references to the evidence in the record" to substantiate his opinion. (AR. 25.) However, the ALJ stated that he also considered Ada V.'s other physical examinations, "which revealed relatively benign findings." (AR. 25.)[4]

ALJ Miller also gave "some weight" to a submission by Robert Rodriguez, Ada V.'s son, consisting of a third-party function report in March 2017, which stated that Ada V. "had difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, … and using her hands due to her impairments." (R. 24.) The ALJ stated that while "a claimant's family member is not an acceptable medical source," Rodriguez's opinion was supported by other parts of the record. (AR. 24.)

As to Ada V.'s mental impairments, the ALJ afforded "significant weight" to the opinion of Dr. Arrington, who conducted a psychiatric consultative examination in October 2016. According to Dr. Arrington, Ada V. "was able to follow and understand simple directions and instructions; maintain attention and concentration; and maintain a regular schedule." (AR. 24.) On the other hand, Dr. Arrington observed that Ada V. "would have difficulties performing simple tasks and complex tasks 'due to low motivation.'" (AR. 24).[5] ALJ Miller stated that his opinion was consistent with and supported by Dr. Arrington's findings. (AR. 24.)

The ALJ additionally gave "some weight" to the opinion of Dr. Suansilppongse, who claimed that Ada V. "had moderate limitations in the paragraph 'B' criteria of the listings." (AR. 24.) ALJ Miller explained that while he agreed that Ada V. had no more than moderate limitations in the paragraph

---

[4]   The ALJ also considered the "physical examination conducted by Dr. Cornejo" and his findings. AR. 25.

[5]   Dr. Arrington additionally noted that Ada V. would have difficulty performing complex tasks due to "problems with her memory." (AR. 24.)

11

"B" criteria, the record established that Ada V. only has mild limitations interacting with others. (AR. 24.) Finally, ALJ Miller afforded "little weight" to the opinion of Dr. De Paz-Ortiz, who reported that Ada V. had mild limitations in the paragraph B criteria, because her opinion "is less restrictive than indicated by the evidence as a whole, and does not adequately consider the claimant's subjective symptoms." (AR. 24.)

Based on these findings, at step four, ALJ Miller agreed with the vocational expert and concluded that Ada V. was unable to perform her past work as a security guard. (AR. 26.)

### Step 5

At step five, ALJ Alvarado explained that prior to November 26, 2018, and "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (AR. 27.) The ALJ relied on the testimony of a vocational expert, who testified that Ada V. would have been able to perform the following representative occupations: Ticket Seller (Dictionary of Occupational Titles ("DOT")) 211.467-030; Office Helper, (DOT) 239.567-010, and Recreation Aide, (DOT) 195.367-030. (AR. 27.) All three occupations are classified as light, unskilled work, and there are between 15,000 and 25,000 positions in these three occupations in the United States. (AR. 28.)

Accordingly, the ALJ concluded that Ada V. was not disabled prior to November 26, 2018. (AR. 25.)

The ALJ also concluded that beginning on November 26, 2018, when Ada V.'s age category changed to an individual of advanced age, "considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [Ada V.] could perform." (AR. 28.) Therefore, ALJ Miller found that Ada V. became disabled beginning on November 26, 2018. (AR. 28.)

### III. DISCUSSION

#### A. Whether the ALJ Properly Evaluated the Medical Opinion Evidence

Ada V. appears to challenge the Commissioner's decision on one primary ground. According to Ada V., the ALJ's RFC is not supported by substantial evidence because the RFC fails to reasonably consider medical expert Dr. Shapiro's opinion that her medical impairments "would limit her to sedentary occupations." (Pl. Br. at 19; AR. 51-52.) I disagree. The Court finds that the ALJ's RFC was supported by substantial evidence and that the ALJ properly weighed and considered the record evidence.

An ALJ's RFC determination must be based on the medical evidence of record. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.") The ALJ is required to "provide a 'clear and satisfactory explanation' of the basis on which [her] determination rests." *Mays v. Barnhart*, 78 F. App'x 808, 812 (3d Cir. 2003) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). When an ALJ rejects a medical opinion, he or she is required to point to "contradictory medical evidence." *Cunningham v. Comm'r of Soc. Sec.*, 507 Fed. App'x 111, 118 (3d Cir. 2012). And where, as here, the ALJ discounts, rather than rejects, opinion evidence, he or she must "consider all the evidence and give some reason for discounting the evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

"[A] reviewing court should not re-weigh the medical opinions of record but should consider only whether the ALJ's weighing of such opinion was supported by substantial evidence." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (citation omitted). Ultimately, the ALJ, and not the treating or examining physicians, "must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527 (e)(1), 404.1546(c)).

Ada V. asserts that the ALJ gave "no reason, reviewable, or otherwise" to only attribute "some weight" to Dr. Shapiro's medical opinion. (Pl. Br. at 21.)

13

According to Ada V., the ALJ failed to explain: (1) what "some weight" means; (2) what parts of Dr. Shapiro's opinion "are accepted and why they are accepted"; and (3) what parts of Dr. Shapiro's opinion are not given any weight. (Pl. Br. at 20.)

Dr. Shapiro reported that in his opinion, Ada V. could "stand for one hour at a time but only one hour in a working day" and only "walk 30 minutes at [a] time and one hour in a working day," therefore limiting her to only "sedentary occupations." (AR. 52.) He explained that Ada V.'s medical record "details changes not only of degenerative disease but also of rheumatoid arthritis in her hands and her knees." (AR. 53.)[6] Because Ada V. suffered from more than simple "degenerative arthritis," Dr. Shapiro claimed that his opinion was "a valid diagnosis" supported by physical and laboratory findings. (AR. 53.)

The ALJ's RFC finding, which accepted much but not all of Dr. Shapiro's findings, was not based solely on "lay opinion" and was not contradictory to "the very medical sources and opinions" upon which the RFC should be based. (Pl. Br. at 23.) In giving Dr. Shapiro's opinion "some weight," the ALJ explained that he also considered Ada V.'s other physical examinations—"which revealed benign findings"—and Dr. Cornejo's physical examination. (AR. 21.) Those other physical examinations were as follows:

First, the ALJ considered physical examinations performed by Dr. Maiello from January 9, 2017 through September 9, 2018. For example, during a January 2017 examination, Dr. Maiello reported that despite Ada V.'s complaints of joint pain, swelling and stiffness in her upper and lower extremities, she still exhibited a "good range of motion of the feet and ankles bilaterally" and displayed "muscle strength [that] was 5 out of 5 in [her] upper and lower extremities bilaterally." (AR. 22.) Similarly, during a July 2017

---

[6] Dr. Shapiro testified that his opinion was informed by Exhibits 5F (January 23, 2017 Medical Records from Dr. Maiello) and 13F (March 25, 2019 Internal Medicine Consultative Examination from Dr. Cornejo).

physical examination, Ada V. (1) "ambulated without difficulty"; (2) exhibited "good range of motion" in her elbows and knees without pain; and (3) maintained "5 our of 5 [muscle strength] in [her] upper and lower extremities." (AR. 22-23.) And notably, during physical examinations in November 2017 and August 2018, while Ada V. reported no change in symptoms, Dr. Maiello's findings were consistent with prior examinations (characterized by the ALJ as "relatively benign findings"). (AR. 23.)

Second, the ALJ considered Dr. Conejo's March 2019 internal medicine consultative examination of Ada V. Despite Ada V.'s claimed symptoms, the medical report stated that she (1) could ambulate "without the use of a handheld assistive device; (2) "squat and walk on heels and toes"; (3) "walk and stand for a reasonable time with needed breaks"; (4) exhibited no "significant balance limitations"; (5) had "good use of upper extremities for movements such as reaching"; (6) exhibited "good functionality of her right and left hands"; and (7) had the ability "to handle fine and small sized objects," with "no significant limitations to fingering such as picking and pinching objects." (AR. 24-25.) Ultimately, however, Dr. Conejo limited Ada V. to sedentary work and concluded that she could only occasionally (up to 1/3 of the day) use both her hands and feet. (AR. 25.)

These were adequate bases for the ALJ to discount Dr. Shapiro's opinion, and I find no reason to question the ALJ's ultimate RFC decision. In affording Dr. Shapiro's opinion only "some weight," the ALJ determined that Dr. Shapiro's proffered standing, walking, fingering, and handling limitations were inconsistent with the whole record—particularly the examinations performed by Dr. Maiello and Dr. Conejo. Moreover, the ALJ also reasoned that Dr. Conejo's determination that Ada V. would only be able to perform sedentary work, with appropriate limitations to the use of her hands and feet, was inconsistent with his own medical report, and was also inconsistent with other physical examinations in the record. (AR. 25)

The ALJ's RFC determination was based on a thorough discussion of the medical evidence, and was not a mere lay opinion. To be sure, the ALJ's view

15

was not the only possible one. As previously established, however, this court is not empowered to "re-weigh the medical opinion of record" when the ALJ has done so. *Hatton*, 131 F. App'x at 880. Accordingly, based on the evidence in the record and the ALJ's stated reasons, I find that the ALJ's determination of how much weight to give the medical opinions was supported by substantial evidence in the record.

### IV.   CONCLUSION

For the reasons set forth above, the Commissioner's decision is affirmed.

A separate order will issue.

Dated: March 22, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**